UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JOHANNA SENATOR,

    Plaintiff,

    v.

UNITED STATES OF AMERICA;
DEPARTMENT OF INTERIOR
BOARD OF INDIAN APPEALS;
GALE A. NORTON,

    Defendants.

NO.  CV-05-3105-RHW

**ORDER GRANTING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment (Ct. Recs. 40 and 46). A hearing on these motions was held on December 8, 2009. Plaintiff was represented by Moni Law; the Government was represented by Assistant United States Attorney, Frank Wilson.  For the reasons set forth below, the Court grants Plaintiff's motion and denies Defendants' motion.

## BACKGROUND

The facts and legal background here are simple and undisputed, and are succinctly set forth in the Board of Indian Appeals' "Order Affirming Decision," Ct. Rec. 2, Ex. A. In 1977, the Yakama Nation enacted code provisions on marriage and divorce. Section 22.01.05 of the Code provides for two methods of marriage: under a marriage license issued by the Yakama Tribal Court, or by solemnization under tribal custom. However, the Code recognizes tribal custom marriages consummated after 1977 as legal and binding only if, no later than five days after the ceremony, each party signs a Marriage Register maintained by the Yakama Tribal Court. As for divorce, section 22.01.17 provides: "A marriage may

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT * 1**

be dissolved by divorce in the Yakama Tribal Court for incompatibility of the parties for whatever reason." If a married party fails to legally annul or dissolve her marriage, the Code provides that any subsequent marriages are prohibited or invalid. Section 22.01.11.

In November of 1973, Phillip Quaempts married Bernadine Napyer Quaempts. In May 1980, the couple separated permanently, with no intent to reunite. Mr. Quaempts took no action to formalize the divorce.[1] However, the couple divorced under tribal custom by "splitting the blankets". In November 1980, Mr. Quaempts married Plaintiff in a tribal custom ceremony in a Shaker church on the Yakama Reservation. The couple appear to have been unaware of the Code's requirements for formalizing custom marriages, and took no steps to sign a marriage register. In fact, the Court Administrator for the Yakama Tribal Court declares that the Tribal Court does not have and has never had such a registry. Ct. Rec. 43, Declaration of Anna Sampson.

Mr. Quaempts died intestate in 1996. Administrative Law Judge William Hammett of the U.S. Department of Interior's Office of Hearings and Appeals held probate hearings in 1998 and 1999 to determine Mr. Quaempts' heirs and dispose of his property, including his home in which Plaintiff has resided since 1980. Judge Hammett found that Plaintiff was not legally married to Mr. Quaempts and denied her claim to his property. He also denied Plaintiff's request for rehearing. Both orders were upheld by the Interior Board of Indian Appeals, who concluded that Plaintiff's "claim to have married Decedent fails because [Plaintiff] and Decedent failed to sign the marriage register as required by the Yakama code." Ct. Rec. 2, 41 IBIA 255. The Board was unswayed by the fact that no such marriage register had

---

[1] Apparently, in the early 1990s Mr. Quaempts researched the legal requirements for divorce. However, he never took any legal action of record. See Ct. Rec. 46-2, transcript of Probate Hearing, p. 14.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** * 2

ever existed. Finally, based on its conclusion that Plaintiff and Mr. Quaempts were never legally married, the Board declined to reach the question of whether Mr. Quaempts validly divorced his first wife.

This lawsuit was filed in 2005, and has been stayed for years while the parties attempted to resolve this dispute themselves. Those attempts were unsuccessful, and these cross-motions followed. At the administrative level and in her Complaint, Plaintiff sought reimbursement for amounts of money she allegedly expended on Mr. Quaempts' behalf. However, in her motion she asks only for the Court to declare her marriage to be valid, and to reverse the judgment of the Board.

## STANDARD OF REVIEW

The parties agree that the Court's standard of review is set by the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Under the APA, the Court must determine whether the Board's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." If the Court can "examine the relevant data and articulate a rational connection between the facts found and the choice made," the decision of the Board should be affirmed. *Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 914 (9th Cir. 1995) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).[2]

## SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is (1) no genuine issue as to (2) any material fact and that (3)

---

[2] There is some indication in Ninth Circuit precedent that an agency's decisions on purely legal issues should be reviewed *de novo. Go Leasing, Inc. v. Nat'l Transp. Safety Bd.,* 800 F.2d 1514, 1517 (9th Cir. 1986). Nonetheless, under *Hopi Tribe*, 46 F.3d at 914, and the agreement of the parties, the Court applies the APA's arbitrary and capricious standard.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** * 3

1  the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.

2  56(c). When considering a motion for summary judgment, a court may neither

3  weigh the evidence nor assess credibility; instead, "the evidence of the non-movant

4  is to be believed, and all justifiable inferences are to be drawn in his favor."

5  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A "material fact" is

6  determined by the substantive law regarding the legal elements of a claim. *Id.* at

7  248. If a fact will affect the outcome of the litigation and requires a trial to resolve

8  the parties' differing versions of the truth, then it is material. *S.E.C. v. Seaboard*

9  *Corp.*, 677 F.2d 1301, 1305-06 (9th Cir. 1982). A dispute about a material fact is

10  "genuine" if the evidence is such that a reasonable jury could return a verdict for

11  the nonmoving party. *Liberty Lobby,* 477 U.S. at 248.

12      The moving party has the burden of showing the absence of a genuine issue

13  as to any material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). In

14  accord with Rules of Civil Procedure  56(e), a party opposing a properly supported

15  motion for summary judgment "may not rest upon the mere allegations or denials

16  of his pleading, but... must set forth specific facts showing that there is a genuine

17  issue for trial." *Id.* Summary judgment is appropriate only when the facts are fully

18  developed and the issues clearly presented. *Anderson v. American Auto. Ass'n*, 454

19  F.2d 1240, 1242 (9th Cir. 1972). "Rule 56(c) mandates the entry of summary

20  judgment against a party who fails to make a showing sufficient to establish the

21  existence of an element essential to that party's case, and on which that party will

22  bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

23  (1986).

24                                **ANALYSIS**

25      Plaintiff offers three arguments in support of her motion: (1) tribal custom

26  remains valid despite the Yakama Nation's Code; (2) under Washington law, Mr.

27  Quaempts' marriage to his first wife, Ms. Napyer, was "defunct"; and (3) Ms.

28  Napyer's claim to Mr. Quaempts' property is barred by estoppel and laches.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT * 4**

1    Plaintiff's first argument is summarized in the Declaration of Jerry

2    Meninick, a former Chairman of the Yakama Nation Tribal Council: "It is an

3    essential and undisputed fact that our traditional and customary laws have

4    supremacy and pre-empt lower laws set by the state or federal government, *or even*

5    *by written code of the tribe*." Ct. Rec. 43, p. 11 (emphasis added).

6    The parties agree that there is a paucity of controlling law on the relationship

7    between Yakama tribal custom and the Yakama Nation's Code. In denying

8    Plaintiff's claim that she and Mr. Quaempts were legally married, the Board of

9    Indian Appeals purported to apply the law of the jurisdiction where the relationship

10    was created – Yakama tribal law. Yet neither the parties nor the Court have found

11    any controlling authority to guide the Court's interpretation of that body of law.

12    And while the Board of Indian Appeals relied in part on a related decision of the

13    Yakama Tribal Court, that decision's legal conclusion is directly contradicted by

14    the Declaration of Mr. Meninick, a tribal elder who is himself a source of

15    authority.

16    Mr. Meninick's characterization of the hierarchy of tribal customs over tribal

17    codes finds support in persuasive authority Plaintiff cites. The Supreme Court has

18    held that a customary marriage may be valid under Creek Nation law despite the

19    absence of a judge's or preacher's solemnization, as required by Creek tribal code,

20    where evidence established that the solemnization requirement was customarily

21    disregarded. *Carney v. Chapman*, 247 U.S. 102, 103-04 (1918). A number of

22    courts in the Tenth Circuit have accepted the proposition that tribal customary

23    marriages and divorces remain valid despite a couple's failure to comply with

24    tribal code provisions. *United States v. Jarvison*, 409 F.3d 1221, 1227-28 (10th

25    Cir. 2005); *Marris v. Sockey*, 170 F.2d 599, 601 (10th Cir. 1948); *Kunkel v.*

26    *Barnett*, 10 F.2d 804, 805-06 (D.C. Okl. 1926). Plaintiff's position also finds

27    academic support: "[T]he typical order of authority for tribal judges is custom first,

28    code second, and federal law third." Robert D. Cooter and Wolfgang Fikentscher,

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT** * 5

*American Indian Law Codes: Pragmatic Law and Tribal Identity*, 56 AM. J. COMP. L. 29, 61 (2008).

The record here leaves no doubt that Plaintiff and Mr. Quaempts were married in fact. The couple held themselves out as husband and wife and were fully accepted as such by their community. Moreover, it is undisputed that Mr. Quaempts' customary divorce from Ms. Napyer was accepted by the community as final and complete. The community currently treats Plaintiff, and not Ms. Napyer, as Mr. Quaempts' widow. Under these circumstances, the agencies' reliance on the Code's registration requirement elevates form over substance. At oral argument even the Government conceded that the Board's decision violated the spirit, if not the letter, of tribal law, and led to an inequitable result. That is particularly true in light of the fact that the Code's registration requirement, just like the solemnization requirement in *Carney*, 247 U.S. at 104, was customarily disregarded by the tribe itself – so much so that no marriage register has ever been created. It would thus be absurd to conclude that a customary marriage, fully accepted by the tribe in fact, was invalid because Plaintiff and Mr. Quaempts failed to comply with an impossible requirement: signing a marriage register that has never in fact existed. Further, it would be arbitrary and capricious not to defer to the uncontested traditions of the tribe, as established by the elder's statement of tribal law and the tribe's acceptance of the marriage and divorce at issue.

In conclusion, the Court finds the marriage between Plaintiff and Mr. Quaempts to be valid under Yakama tribal law, and accordingly sets aside the Board's decision to the contrary as arbitrary, capricious, and not in accordance with law. The Court grants Plaintiff's motion on the basis of her first argument, and declines to reach her second and third arguments. Defendants' cross-motion is denied.

///

Accordingly, it is **HEREBY ORDERED:**

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** * 6

1.  Plaintiff's Motion for Summary Judgment (Ct. Rec. 40) is **GRANTED.**

2.  Defendants' Cross-Motion for Summary Judgment (Ct. Rec. 46) is **DENIED.**

3.  The September 28, 2005, decision of the Board of Indian Appeals (Docket No. IBIA 03-140) is **reversed.**

4.  This matter is remanded to the Board of Indian Appeals for further proceedings consistent with this Order.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order, forward copies to counsel, and **close the file**.

**DATED** this 26th  day of February, 2010.


_s/Robert H. Whaley_
ROBERT H. WHALEY
United States District Judge


Q:\CIVIL\2005\Senator\sj.ord.wpd

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT * 7**